Levi **TOWNSEND**, Plaintiff–Appellant,

v.

Lyle **QUASIM**, Secretary of the State of Washington Department of Social and Health Services (DSHS), Defendant–Appellee.

No. 01–35689.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2002.

Filed May 1, 2003.

Katrin E. Frank, Timothy K. Ford and Andrea Brenneke, MacDonald, Hoague & Bayless, Seattle, Washington, for the plaintiff-appellant.

Alan Smith and William L. Williams, Assistant Attorneys General, Department of the Attorney General, State of Washington, Olympia, Washington, for the defendant-appellee.

Before: BEEZER, GOULD and BERZON, Circuit Judges.

Opinion by Judge BERZON; Dissent by Judge BEEZER.

## OPINION

BERZON, Circuit Judge.

Levi Townsend, as representative for a certified class of disabled Medicaid recipients residing in Washington state, appeals a district court's grant of summary judgment in favor of the Secretary ("the Secretary") of the State of Washington's Department of Social and Health Services ("DSHS"). Mr. Townsend contends that the state's use of community-based services to provide essential long term care to some disabled Medicaid recipients but not others violates Title II of the Americans with Disabilities Act ("ADA") and a Department of Justice regulation implementing the ADA and mandating that public entities administer and deliver government services to qualified disabled persons in "the most integrated setting" possible. *See* 42 U.S.C. § 12132; 28 C.F.R. § 35.130(d).

Because we find that the Secretary's refusal to offer community-based in-home nursing services to some disabled persons may violate the ADA, we reverse the district court's grant of summary judgment for the Secretary. In consideration of the Secretary's arguments that extending eligibility for in-home nursing services to all the state's disabled Medicaid recipients may fundamentally alter the state's Medicaid program, not addressed by the district court, we remand this case for further factual findings and development of the record.

## BACKGROUND

### A. *Medicaid in Washington State*

The federal Medicaid program "provid[es] federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).

Participation by states in the Medicaid program is optional, but a state receiving Medicaid funds must comply with the requirements of the Medicaid Act. *Id.; see* 42 U.S.C. § 1396a. An exception to this rule is the Medicaid waiver program, under which the Secretary of Health and Human Services is authorized to waive certain Medicaid requirements for innovative or experimental state health care programs. *See* 42 U.S.C. § 1396n; 42 C.F.R. § 430.25(b). The programs encouraged by the waiver program include increased provision of home and community based health care to Medicaid recipients who would otherwise qualify for nursing home care. *See* 42 U.S.C. § 1396n(c)(1).

▮ The Medicaid Act groups needy persons into two categories, usually distinguished by income level: the "categorically needy" and the "medically needy." 42 U.S.C. § 1396a(a)(10)(A); 42 C.F.R. § 435.4; *Schweiker v. Hogan,* 457 U.S. 569, 572–73, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982). A participating state must provide certain types of services to categorically needy persons. *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(1)-(5), (17), (21). For medically needy persons, the state is only obligated to establish "reasonable standards" consistent with the purposes of the Medicaid Act for determining the extent of assistance it will offer. *Beal v. Doe,* 432 U.S. 438, 441, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977); 42 U.S.C. § 1396a(a)(17).

Washington receives Medicaid funding and funds the provision of long-term medical care and living assistance in nursing home settings to both the categorically and the medically needy. Categorically needy Washington state residents, however, have the additional option of receiving long-term living assistance and medical care in their own homes or adult family homes in the community through a Medicaid waiver program: Community Options Program Entry Services ("COPES"). Medically needy persons must receive Medicaid-funded long term living and medical assistance in a nursing home setting or not at all.

### B. *Plaintiffs and Procedural History of this Case*

Levi Townsend, the lead plaintiff in this case, is in his eighties, has diabetic peripheral vascular disease, and is a bilateral amputee. In addition to medical treatment, he requires assistance preparing meals, performing housework, bathing, dressing, and attending to other personal hygiene needs. Mr. Townsend is eligible for Medicaid services administered by DSHS because he is a person with a limited income.

Before July 1999, Mr. Townsend's income placed him among the "categorically needy" who qualified for COPES assistance. Rather than move to a nursing home, Mr. Townsend chose to receive COPES services in a community-based adult family home setting. This arrangement enabled Mr. Townsend to remain in his own community, near friends and family.

In Washington, persons whose income is at or below three-hundred percent of the Social Security Income Federal Benefit Rate ("SSI FBR") are deemed categorically needy. *See* Wash. Admin. Code § 388–513–1301. In July 1999, Mr. Townsend's income increased to approximately forty-six dollars above three hundred percent of the SSI FBR. This increase meant that Mr. Townsend was no longer "categorically needy," but, instead, only "medically needy." DSHS informed Mr. Townsend that he would have to move to a nursing home within 30 days or lose his Medicaid benefits.

In May 2000, Mr. Townsend filed suit on behalf of himself and a class of similarly situated Medicaid recipients certified by the district court, seeking to enjoin the requirement that he move to a nursing home as a condition of receiving needed, available Medicaid services. Mr. Townsend alleged that DSHS's denial of community-based long term care to medically needy disabled persons violated the ADA by (1) discriminating on the basis of disability; and (2) contravening the principles expressed in *Olmstead v. L.C.*, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), and the ADA's "integration regulation," which require that public entities administer services "in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

The district court granted summary judgment for the DSHS Secretary. The court held that the exclusion of medically needy persons from COPES did not discriminate on the basis of Medicaid recipients' disability, but instead permissibly allocated services according to recipients' income levels. Characterizing COPES as a distinct program through which "Washington state has sought to provide additional services for the most needy individuals," the court further held that modifying the income-based restrictions on COPES eligibility for disabled medically needy persons would "fundamentally alter" the program by "merging the two distinct classes of categorically needy and medically needy individuals." Because the ADA ordinarily does not require fundamental alterations to state programs, the court found that exclusion of medically needy disabled persons from COPES did not violate the ADA.

With regard to plaintiffs' separate argument that the Secretary was violating the ADA's integration mandate by not providing services to medically needy disabled persons in the most integrated setting possible, the court relied on *Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir.1999), in which the Second Circuit stated that the ADA does not require the state to provide services that it does not already provide to the disabled. In the court's view, requiring the state to provide long term care in community-based settings as well as nursing homes would mean developing and funding a new program of services for the disabled. The court concluded that "because Washington state does not provide community-based programs to the medically needy, the integration mandate does not require their creation."

Mr. Townsend appeals the court's grant of summary judgment on his claim that the state's failure to provide long-term care to the medically needy disabled in a community-based setting violates the ADA principles expressed in *Olmstead* and the integration regulation implementing those principles. He does not appeal the grant of summary judgment on his claim that exclusion from COPES discriminated against class members on the basis of disability.

## ANALYSIS

### A. *The ADA's Integration Mandate*

In adopting the ADA, Congress recognized that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem," and that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, ... failure to make modifications to existing facilities and practices, ... [and] segregation." 42 U.S.C. § 12101(a)(2), (5). Congress aimed

to eliminate this unjustified segregation and isolation of disabled persons through, among other provisions of the ADA, Title II, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The Department of Justice's integration regulation implements the isolation and segregation concerns that, in part, underlie Title II. The regulation states: "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified persons with disabilities." 28 C.F.R. § 35.130(d). Another regulation provides: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

In *Olmstead v. L.C.,* the Supreme Court applied the integration and anti-isolation principles, interpreting discrimination forbidden under Title II of the ADA to include "[u]njustified isolation of the disabled." *Olmstead,* 527 U.S. at 597, 119 S.Ct. 2176. *Olmstead* held that Georgia's practice of institutionalizing mentally disabled persons rather than providing them with community-based treatment would violate the ADA unless Georgia could demonstrate that modifying state programs to provide community-based care would fundamentally alter the nature of the services it offered the mentally disabled. The Court reasoned:

Recognition that unjustified institutional isolation of persons with disabilities is a form of discrimination reflects two evident judgments. First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life.... Second, confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment.

*Id.* at 600–01, 119 S.Ct. 2176.

■ The plain language of the integration regulation, coupled with the reasoning and holding of *Olmstead,* direct our analysis in this case. To prove that a public service or program violates Title II of the ADA, a plaintiff must show "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1135 (9th Cir.2001).

The parties do not dispute that Mr. Townsend is disabled within the meaning of the ADA. As a person within the "medically needy" category of Medicaid recipients, Mr. Townsend is qualified to receive long-term medical care and living assistance through Washington's Medicaid program. As shown by Mr. Townsend's benefit from, and preference for, receiving this care through the COPES program, community-based services are appropriate for his needs.

■ In *Olmstead,* the Supreme Court interpreted the failure to provide Medicaid services in a community-based setting as a

form of discrimination on the basis of disability. When a state's policies discriminate against the disabled in violation of the ADA, the ADA's regulations mandate reasonable modifications to those policies in order to avoid discrimination on the basis of disability, at least when such modification would not fundamentally alter the nature of the services provided by the state. *Lovell v. Chandler,* 303 F.3d 1039, 1054 (9th Cir.2002) (citing *Crowder v. Kitagawa,* 81 F.3d 1480 (9th Cir.1996)). Because DSHS does not allow Mr. Townsend to receive the services for which he is qualified in a community-based, rather than nursing home, setting, Mr. Townsend can prove that the Secretary has violated Title II of the ADA, unless the Secretary can demonstrate that provision of community-based services to Mr. Townsend and members of the class would fundamentally alter the nature of the services DSHS provides.

The district court relied on *Rodriguez v. City of New York,* 197 F.3d 611 (2d Cir. 1999) to distinguish this case from *Olmstead.* In *Rodriguez,* a class of Medicaid recipients challenged New York's failure to provide safety monitoring services as part of its Medicaid program providing personal care services (such as assistance bathing, dressing, and toileting) to financially needy disabled individuals. *Id.* at 613–14. The *Rodriguez* court found that the plaintiff class was demanding a separate service, one not already provided by the City, and that "[t]he ADA requires only that a particular service provided to some not be denied to disabled people.... New York cannot have unlawfully discriminated against appellees by denying a benefit that it provides to no one." *Id.* at 618. The *Rodriguez* court found *Olmstead* inapposite because "[i]n *Olmstead,* the parties disputed only—and the Court addressed only—*where* Georgia should provide treatment, not *whether* it must provide it." *Id.* at 619 (emphasis in original).

The district court's reliance on *Rodriguez* in support of its determination that Mr. Townsend is requesting new benefits not currently provided by the state's Medicaid program is misplaced. As *Rodriguez* makes clear, where the issue is the *location* of services, not *whether* services will be provided, *Olmstead* controls.

Here, the precise issue is not whether the state must provide the long term care services sought by Mr. Townsend and the class members—the state is already providing these services—but in what location these services will be provided. Mr. Townsend simply requests that the services he is already eligible to receive under an existing state program (assistance in dressing, bathing, preparing meals, taking medications, and so on) be provided in the community-based adult home where he lives, rather than the nursing home setting the state requires. *See Helen L. v. DiDario,* 46 F.3d 325, 337–39 (3d Cir.1995) (state violated the ADA's integration mandate by not providing state-funded attendant care services for which plaintiff was eligible in her own home, rather than a nursing home).

Characterizing community-based provision of services as a new program of services not currently provided by the state fails to account for the fact that the state is already providing those very same services. If services were determined to constitute distinct programs based solely on the location in which they were provided, *Olmstead* and the integration regulation would be effectively gutted. States could avoid compliance with the ADA simply by characterizing services offered in one isolated location as a program distinct from the provision of the same services in an integrated location.

After considering the language of the statute and of the integration regulation

and the Supreme Court's mandate and reasoning in *Olmstead,* we conclude that DSHS is in violation of Title II of the ADA by failing to provide long term care services it currently provides to medically needy disabled persons in integrated settings, unless it can show that providing services in community-based settings would fundamentally alter the nature of the services it currently dispenses to medically needy Medicaid recipients in Washington.[1]

## B. *Fundamental Alteration*

■■■ It is clear from the language of Title II and the integration regulation that public entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons. *See Rodriguez,* 197 F.3d 611; *see also Alexander v. Choate,* 469 U.S. 287, 303, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) ("Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs.... [T]he benefit provided remains the individual services offered—not 'adequate health care.' ") Nor, ordinarily, must public entities make modifications that would fundamentally alter

existing programs and services administered pursuant to policies that do not facially discriminate against the disabled:

A public entity shall make *reasonable modifications* in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, *unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.*

28 C.F.R. § 35.130(b)(7) (emphasis added). As the regulatory language makes clear, entities are required only to make *reasonable* changes in existing policies in order to accommodate individuals' disabilities. *Olmstead,* 527 U.S. at 603, 119 S.Ct. 2176. Plaintiffs do not challenge the applicability of a fundamental alteration defense in this case, so we assume it applies.[2]

■■■ The Secretary contends that a decision that the state must offer community-based long term care services to disabled medically needy persons would fundamentally alter Congress's and the state legislature's considered policy decisions to provide long term care services to medically needy persons only in nursing homes. But

---

1. We do not agree with the dissent that this case raises any question requiring us to reconcile the ADA with the Medicaid Act. The Medicaid Act does not forbid the state to provide care to disabled persons in their own communities. Rather, the Medicaid statutes set conditions for the availability of federal funds. As we later discuss, limitations on the availability of those funds may be relevant to the fundamental alteration defense, but those limitations are not pertinent to the question whether plaintiffs have met their burden of demonstrating a prima facie violation of the integration regulation.

2. In *Lovell v. Chandler,* 303 F.3d 1039, 1054 (9th Cir.2002) and *BAART v. City of Antioch,* 179 F.3d 725, 733 (9th Cir.1999), we held that the fundamental alteration defense does not apply to cases of facial discrimination.

In *Olmstead,* the Supreme Court stated that the fundamental alteration test would apply to determine whether Georgia had an obligation to provide community-based treatment to mentally disabled individuals in existing programs established for that purpose. In *Olmstead,* however, the operative law did not, on its face, isolate or segregate disabled persons. In contrast, Washington's law, explicitly providing only nursing-home based long term care services to the medically needy, may be read to facially discriminate against disabled persons, because those who need the kind of long term assistance at issue here (i.e., assistance in performing essential life activities) are disabled within the meaning of the ADA. *See* 42 U.S.C. § 12102(2).

policy choices that isolate the disabled cannot be upheld solely because offering integrated services would change the segregated way in which existing services are provided. *Olmstead* makes that clear, for precisely that alteration was at issue in *Olmstead*, and *Olmstead* did not regard the transfer of services to a community setting, without more, as a *fundamental* alteration. Indeed, such a broad reading of fundamental alteration regulation would render the protection against isolation of the disabled substanceless.

Furthermore, the Secretary's argument fails to account for the explicit policy preferences for home- and community-based care contained in recent federal and state Medicaid statutes. Through the Medicaid waiver program, Congress has encouraged states to experiment with providing medical care in community— and home-based settings for the categorically needy. *See* 42 U.S.C. § 1396n(c); *cf. Olmstead*, 527 U.S. at 601, 119 S.Ct. 2176. In addition, the Washington state legislature has itself declared that "the public interest would best be served by a broad array of long-term care services that support persons who need such services at home or in the community whenever practicable and that promote individual autonomy, dignity, and choice." Wash. Rev.Code § 74.39A.005. In recognition of these important goals, the Washington legislature has taken steps to establish a Medicaid waiver program through which some medically needy persons may receive the same sort of community-based services provided only to the categorically needy under the current COPES program. *See* Wash. Rev.Code § 74.39.041(1). A finding that the Secretary may have discriminated by unneces-

sarily isolating and segregating the medically needy disabled in nursing homes therefore offends no deep-seated policy choices, and in fact coincides with the federal and state governments' growing recognition of the value of community-based care for disabled persons.

The Secretary further argues that extending community-based services to medically needy disabled persons might fundamentally alter the state's Medicaid program by requiring DSHS to apply for additional Medicaid waivers in order to provide community-based services to medically needy disabled persons and burdening the state Medicaid program's fisc to the extent that the state would be compelled to make significant cuts in Medicaid services.

Addressing an integration challenge by mentally disabled Georgians who were only offered Medicaid-funded treatment in institutional settings, a Supreme Court plurality[3] in *Olmstead* made clear that courts evaluating fundamental alteration defenses must take into account financial and other logistical limitations on a state's capacity to provide integrated services to the disabled:

> States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the state and the needs of others with mental disabilities.

---

**3.** The section of Justice Ginsburg's opinion discussing the state's fundamental alteration defense commanded only four votes. Because it relied on narrower grounds than did Justice Stevens' concurrence or Justice Ken-

nedy's concurrence, both of which reached the same result, Justice Ginsburg's opinion controls. *See Smith v. Univ. of Washington, Law Sch.*, 233 F.3d 1188, 1199 (9th Cir.2000).

*Olmstead,* 527 U.S. at 607, 119 S.Ct. 2176. *Olmstead* counsels that states must be able to take financial burdens into account in administering programs affecting the disabled, *see id.* at 604, 119 S.Ct. 2176, and must enjoy a certain measure of leeway "to administer services with an even hand" among its citizenry. *Id.* at 605, 119 S.Ct. 2176.

Plaintiffs have asserted that it is cheaper on a per capita basis to provide long-term care services to individuals in a community-based setting rather than a nursing home. This assertion, however, does not account for the cost of serving additional persons who are eligible to receive long-term care services but would not have previously availed themselves of this care when the services were offered only in a nursing home environment. At the same time, even if extension of community-based long term care services to the medically needy were to generate greater expenses for the state's Medicaid program, it is unclear whether these extra costs would, in fact, compel cutbacks in services to other Medicaid recipients. *See Olmstead,* 527 U.S. at 604, 119 S.Ct. 2176 ("Sensibly construed, the fundamental-alteration component of the reasonable-modifications regulation would allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities.")

We cannot tell on the present record whether the concerns raised by the Secretary are valid ones. Because the court granted summary judgment for the Secretary on the question whether plaintiffs could make out an ADA case, neither party has had adequate opportunity to present evidence as to whether the provision of community-based services to medically needy disabled Washingtonians might fundamentally alter its Medicaid programs, applying *Olmstead's* fundamental alteration standards. We therefore remand to the district court for further proceedings to determine whether the Secretary can demonstrate that the modifications requested by the plaintiff class "would fundamentally alter the nature of the services" provided by the state.

## CONCLUSION

■ We hold today that the denial of community-based long term care for "medically needy" disabled persons violates the ADA unless the Secretary can demonstrate that extending eligibility to these persons would fundamentally alter its Medicaid programs. Because the current record does not provide us with sufficient information to evaluate the Secretary's fundamental alteration defense, we remand this case to the district court. On remand, the parties will have an opportunity to develop a relevant factual record and present their arguments for and against the applicability of a fundamental alteration defense in this case.

**REVERSED AND REMANDED.**

BEEZER, Circuit Judge, dissenting:

Levi Townsend contends that the Americans with Disabilities Act requires Washington to create a home and community care program for disabled Medicaid recipients who fall into Medicaid's "medically needy" category. Because the comprehensive structure of the Medicaid Act forecloses this result, Townsend's claim under the Americans with Disabilities Act should fail. The court's opinion to the contrary fails to accord sufficient weight to the Medicaid Act's statutory scheme.

I respectfully dissent.

## I

The Medicaid Act recognizes three broad categories of services that states may use to provide long term medical care to eligible Medicaid recipients. These three service categories are defined by federal law and are defined with reference to where an eligible recipient resides and receives care.

The first category of services are "nursing facility services" ("nursing home care"), which involve medical services provided to Medicaid recipients whose needs require institutionalization in nursing homes.[1] At a minimum, states must provide nursing home care to the neediest Medicaid recipients, those who are classified as "categorically needy."[2] States have the option of providing nursing home care to less needy Medicaid recipients who fall into the "medically needy" category.[3]

The second category of services are "home and community-based services" ("community care"), which involve a wide range of medical services provided to Medicaid recipients who would otherwise require care in a nursing facility.[4] These medical services allow recipients to remain living in their personal residence or other housing in their community. Included within the scope of community care are such services as:

(1) case management services;

(2) homemaker services;

(3) home health aide services;

(4) personal care services;

(5) adult day services;

(6) habilitation services; and

(7) respite care services.[5]

The Medicaid Act gives states the option of offering community care to Medicaid recipients.[6] In an effort to encourage states to offer community care to the disabled, Congress has established a waiver program.[7]

The waiver program exempts states from certain Medicaid requirements for federally-approved community care programs.[8] The waiver program allows states to offer community care to identified subgroups of Medicaid recipients.[9] The dis-

---

1. *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4), (f), 1396r; 42 C.F.R. § 440.155(a).

2. *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4); *Skandalis v. Rowe*, 14 F.3d 173, 175 (2d Cir.1994).

3. *See* 42 C.F.R. § 440.225 (recognizing that the provision of services other than those listed in 42 C.F.R. §§ 440.210 and 440.220 is optional); *Skandalis*, 14 F.3d at 175–76 (explaining the distinction between the "categorically needy" and the "medically needy").

4. *See* 42 U.S.C. § 1396n(c); 42 C.F.R. §§ 440.180, 441.300–.310.

5. 42 C.F.R. § 440.180.

6. *See* 42 U.S.C. § 1396a(a) (outlining the Medicaid Act's mandatory requirements); *Beal v. Doe*, 432 U.S. 438, 444, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977) (recognizing the "broad discretion" conferred by the Medicaid Act on the states in determining the extent of medical assistance); *see also* 42 C.F.R. §§ 440.210 (listing required services for the categorically needy), 440.220 (listing required services for the medically needy), 440.225 (recognizing that all other services "may be furnished under the State plan at the State's option").

7. *See* 42 U.S.C. § 1396n(c); 42 C.F.R. § 430.25; *see also Olmstead v. L.C.*, 527 U.S. 581, 601, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) (recognizing the Department of Health and Human Services policy of "encouraging States to take advantage of the waiver program").

8. *See* 42 U.S.C. § 1396n(c)(3).

9. *See* 42 U.S.C. § 1396n(c); 42 C.F.R. § 441.301(b)(6).

abled constitute one of these subgroups.[10]

Although states are encouraged to create community care programs for the disabled, there is one significant limitation on their ability to create such programs. States cannot create community care programs for the disabled without prior approval from the federal government.[11]

The third category of long term care recognized by the Medicaid Act involves "home health services" ("home care").[12] These services are generally provided in a residential setting, but like community care, home care allows recipients to remain in their communities and avoid institutionalization.[13] At a minimum, a state's home care program must include: (1) nursing services, (2) home health aid services and (3) medical supplies, equipment and appliances.[14]

Under most circumstances, the creation of home care programs falls to the discretion of the states.[15] If a state provides nursing home care to recipients in a given Medicaid category, however, it must also provide home care to recipients in that category.[16]

The state of Washington provides Medicaid recipients who fall into the categorically needy classification with for nursing home care, community care and home care.[17] Washington provides the medically needy with nursing home care and home care.[18] Washington state does not provide community care for the medically needy.[19]

## II

Townsend argues that it is discriminatory for Washington to offer him nursing home care without also offering him community care. He relies on the Americans with Disabilities Act and one of its implementing regulations, 28 C.F.R. § 35.130(d), in support of his argument that Washington discriminates on the basis of disability. This argument ultimately fails because it does not adequately account for the interaction between the Americans with Disabilities Act and the Medicaid Act.

### A

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the Department of Justice regulations implementing the Americans with Disabilities Act, public entities like the State of Washington are required to:

make reasonable modifications in policies, practices or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate

---

**10.** 42 C.F.R. § 441.301(b)(6).

**11.** *See* 42 U.S.C. § 1396n(c); 42 C.F.R. § 441.300; *Skandalis,* 14F.3d at 176.

**12.** *See* 42 U.S.C. § 1396a(a)(10)(D), 1396d(a)(7); 42 C.F.R. § 440.70.

**13.** *See* 42 C.F.R. § 440.70; *see also Skubel v. Fuoroli,* 113 F.3d 330, 337 (2d Cir.1997) (holding that § 440.70's in-home limitation is unreasonable).

**14.** 42 C.F.R. § 440.70.

**15.** *See* 42 C.F.R. § 440.225.

**16.** 42 U.S.C. § 1396a(a)(10)(D).

**17.** *See* Wash. Admin. Code §§ 388–513–1301; 388–529–0200.

**18.** *See* Wash. Admin. Code § 388–529–0200.

**19.** *See* Wash. Admin. Code § 388–529–0200.

that making the modifications would fundamentally alter the nature of the service, program or activity.[20]

Townsend relies on another section of the same Department of Justice regulation in support of his argument that Washington discriminates against him.[21] Section 35.130(d) ("the integration mandate") requires public entities "to administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with a disability."[22] The most integrated setting is "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible."[23] A failure to comply with § 35.130(d) would constitute discrimination because Congress explicitly recognizes that the "segregation" of persons with disabilities is a form of discrimination.[24]

## B

Townsend contends that Washington violates the integration mandate. He first argues that he is eligible to receive the medical services he needs under Washington's Medicaid program if he submits to institutionalization, the prerequisite for receiving nursing home care. He then argues that Washington could, if it so chose, allow him to receive the same medical services he needs in a less isolated setting by establishing a community care program.

According to Townsend, because Washington could provide him with the services he needs in a home or community setting, forcing him to receive these services in a nursing home violates the integration mandate. He therefore believes that Washington must create a community care program for the disabled who fall within the medically needy category.

The state of Washington counters that the Medicaid Act does not require it to provide community care to *anyone* within the medically needy category. The state further contends that it would be unreasonable and a fundamental alteration of its Medicaid program to require the state to create an entirely new community care program for medically needy disabled individuals like Townsend.

Townsend's claim under the Americans with Disabilities Act should not succeed. It is necessary to address the interaction between the Medicaid Act and the Americans with Disabilities Act to see why Townsend's claim fails. A proper reconciliation of these two statutes leads to the conclusion that Washington is not required by the Americans with Disabilities Act to provide community care coverage for disabled Medicaid recipients who fall into the medically needy classification.

## C

Whenever two federal statutes may be in tension or conflict, we are required to reconcile the two statutes. The Supreme Court has given us instructions on how to do so:

It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum, unless the latter statute expressly contradicts the original act or unless

20. 28 C.F.R. § 35.130(b)(7).

21. *See* 28 C.F.R. § 35.130(d).

22. *Id.*

23. 28 C.F.R. Pt. 35, App. A.

24. *See* 42 U.S.C. § 12101(a)(2), (5); *see also* Olmstead v. L.C., 527 U.S. 581, 600, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999).

such a construction is absolutely necessary in order that the words for the later statute shall have any meaning at all. The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.[25]

Applying these instructions, we should conclude that Title II of the Americans with Disabilities Act cannot require Washington to offer community care for disabled medically needy Medicaid recipients.

### D

The Medicaid Act establishes a comprehensive framework regulating the Medicaid program. It is a narrow statute that informs states about what medical services must be provided and what medical services are optional. The Medicaid Act also establishes procedural rules governing the provision of these services. Because the Medicaid Act is a narrow, comprehensive statute, we must apply the *Traynor* analysis in evaluating the impact of the Americans with Disabilities Act on the Medicaid Act.[26]

The Medicaid Act leaves the creation of community care programs to the broad discretion of the states.[27] The only significant limitation on this discretion is that states are forbidden from creating community care programs for the disabled without prior federal approval.[28] There is no statute or regulation that requires states to create community care programs. Community care is the only form of long term care that the Medicaid Act does not require under any set of circumstances.[29] A requirement that states provide community care programs to the disabled is inconsistent with the Medicaid Act's text and structure.

Moreover, Congress consciously chose not to link community care for the disabled to the provision of nursing home care.[30] In the same legislation that established the community care waiver program, Congress made the coverage of home care mandatory for any Medicaid group that receives coverage for nursing home care.[31] At that time Congress opted merely to encourage the creation of community care programs

---

**25.** *Traynor v. Turnage*, 485 U.S. 535, 547–48, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988) (internal citations, brackets and quotation marks omitted).

**26.** *See Traynor*, 485 U.S. at 547–48, 108 S.Ct. 1372 (recognizing that principles for reconciling a statute addressing a narrow, precise and specific subject with more generalized legislation).

**27.** *See* 42 C.F.R. § 440.225.

**28.** *See* 42 U.S.C. § 1396n(c); 42 C.F.R. §§ 430.25, 441.300; *Skandalis*, 14 F.3d at 176.

**29.** *Cf.* 42 U.S.C. §§ 1396(a)(10)(A) (requiring nursing home care for the categorically needy), 1396(a)(10)(D) (requiring home care for those Medicaid categories that receive nursing care).

**30.** *Cf. TRW, Inc. v. Andrews*, 534 U.S. 19, 31 n. 5, 122 S.Ct. 441, 151 L.Ed.2d 339 ("we read Congress' codification of one judge-made doctrine not as a license to imply others, but rather as an intentional rejection of those it did not codify"); *United States v. Fausto*, 484 U.S. 439, 447, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (relying on a statute's comprehensive nature, the statute's attention to the category in question, and the exclusion of the category in question from one section of the statute to conclude that the exclusion represents an intentional "congressional judgment").

**31.** *See* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35 §§ 2171, 2176, 95 Stat. 807–08, 812–13 (codified at 42 U.S.C. §§ 1396a(a)(10)(D), 1396n(c)).

and to do so without regard to the existence or non-existence of nursing home care programs.[32]  Congress has not seen fit to replace the waiver program with a mandatory requirement over the course of the last two decades, leaving the waiver program's optional approach to community care programs for the disabled in force.

Applying *Traynor,* the Americans with Disabilities Act should not transform Washington's exercise of congressionally-conferred discretion into discrimination. The court's opinion to the contrary effectively submerges several sections of the Medicaid Act under the perceived force of the integration mandate.  Today's opinion casts aside the conscious choices Congress made in permitting, but not requiring, states to provide community care for the benefit of the disabled.  Under *Traynor* this result is to be avoided if an alternate approach would continue to give effect to both the Americans with Disabilities Act and the Medicaid Act.[33]  Recognizing that the Americans with Disabilities Act does not address the state of Washington's *initial* decision whether or not to create a community care program provides just such an alternate approach.  Recognizing limits on the ADA in the community care context still leaves the ADA with significant force in regulating the provision of community care to the disabled.  Once a state decides to offer community care to a given Medicaid category, states must administer their community care waiver programs in a manner that complies with the integration mandate.[34]  Following *Traynor's* requirement that we adopt the interpretation that gives a narrow statute like the Medicaid Act full meaning, I would conclude that the ADA does not address Washington's discretion in creating community care programs as the Medicaid Act provides the governing principles.

Because the Americans with Disabilities Act simply does not reach the question posed in this case, the state of Washington's refusal to create a community care program for medically needy disabled recipients is not discrimination based on disability.  The state need not entertain Townsend's proposed modification to its Medicaid program because no modification is needed to "avoid discrimination based on disability."[35]

### E

Looked at another way, even if Washington's failure to create a community care program for the medically disabled could be considered discriminatory, Townsend's proposal, which requires the creation of a community care program, would not be a reasonable modification.  Congress has chosen not to require states to create community programs and Townsend's desire cannot justify setting that choice aside.

The Supreme Court in *U.S. Airways v. Barnett,* 535 U.S. 391, 122 S.Ct. 1516, 1523, 152 L.Ed.2d 589 (2002), recognized in the employment context that Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111–17, does not require an employer to provide an accommodation, even if the accommodation would enable an employee to perform a given task,

---

**32.**  *See* Omnibus Reconciliation Act of 1981, Pub.L. No. 97–35 § 2176, 95 Stat. 812–13; *see also Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 27, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (recognizing the "well-settled distinction between 'encouragement' of state programs and the imposition of binding obligations on the States").

**33.**  *See* 485 U.S. at 547–48, 108 S.Ct. 1372.

**34.**  *See Olmstead,* 527 U.S. at 603, 607 & n. 14, 119 S.Ct. 2176.

**35.**  28 C.F.R. § 35.130(b)(7).

where the accommodation is not independently reasonable.[36] *Barnett* holds that a privately imposed seniority system may trump an employee's proposed accommodation because "it would not be reasonable in the run of cases that the assignment in question trump the rules of a seniority system."[37] I fail to see how Townsend's attempt to set aside the congressional decisions vesting states with discretion in creating community care programs and refusing to link community care for the disabled with the provision of nursing home care can be considered "reasonable."

### III

The opinion of the court filed today relies heavily on the Supreme Court's decision in *Olmstead v. L.C.*, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), in seeking to justify the conclusion that Townsend's proposed modification is reasonable.[38] *Olmstead* does not compel today's decision, but instead supports the conclusion that the Americans with Disabilities Act does not reach Washington's conduct in this case.

Although there is isolated language in *Olmstead* that might suggest that the Americans with Disabilities Act's findings regarding segregation bring a state's discretion in creating community care programs into question, *see* 527 U.S. at 599–600, 119 S.Ct. 2176,[39] the plurality portion of Justice Ginsburg's opinion explicitly cabined *Olmstead's* reach. Justice Ginsburg's opinion recognized that the "State's responsibility, *once it provides community-based treatment* to qualified persons with disabilities, is not boundless."[40]

The majority portion of Justice Ginsburg's opinion even appears to address the very question posed by this case.[41] In footnote 14, the *Olmstead* court states:

> We do not … hold that the Americans with Disabilities Act … requires States to 'provide a certain level of benefits to individuals with disabilities.' We do hold, however, that States must adhere to the Americans with Disabilities Act's nondiscrimination requirement with regard to the services *they in fact provide.*[42]

Justice Kennedy's concurrence is even more clear on this point: "a State may not be forced to create a community-based treatment program where none exists."[43] Cumulatively, these indications in *Olmstead* favor recognizing the states' continu-

---

**36.** The "reasonable" requirement is effectively equivalent for purposes of Title I and Title II of the ADA. *See School Board of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir.2002).

**37.** *Barnett*, 122 S.Ct. at 1524.

**38.** Today's reliance on the integration mandate is also misplaced. The court's opinion fails to indicate how the ADA's version of the integration mandate can require the provision of community care programs for the disabled when Congress created the waiver program in the face of cognate regulations imposing an integration mandate on the Department of Health and Human Services. *See* 45 C.F.R. § 84.4 (1981); 42 Fed.Reg. 22677, 22679 (1977); *see also* 28 C.F.R. § 41.51(d) (1981); *Olmstead*, 527 U.S. at 592, 119 S.Ct. 2176.

**39.** *But see Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (holding a general statement of findings was "too thin a reed to support the rights and obligations read into it by the court below").

**40.** *Olmstead*, 527 U.S. at 603, 119 S.Ct. 2176 (emphasis added).

**41.** *See Olmstead*, 527 U.S. at 603 n. 14, 119 S.Ct. 2176.

**42.** *Id.* (emphasis in original).

**43.** *Id.* at 612–13, 119 S.Ct. 2176 (Kennedy, J., concurring).

ing discretion in creating community care programs, not drastically restricting it.[44]

The court's opinion misses these indicators, drawing from *Olmstead* only the lesson that "where the issue is *location* of services, not *whether* services will be provided, *Olmstead* controls." What the court's opinion fails to recognize is that this case, unlike *Olmstead*, involves the question *whether* Washington must provide disabled medically needy Medicaid recipients with a specific set of new services, namely community care.

Today's opinion evades this question by defining the relevant services as "long term care." This ignores the fact that the services involved in *Olmstead* and this case are defined by federal law with reference to their location.[45] Federal law further recognizes nursing home care and community care as distinct services.[46] The federal source of these definitions prevents the possibility, raised in the court's opinion, that states will attempt to manipulate the definition of services to exclude the disabled.[47] By redefining the services at issue at a broad level of generality, today's opinion contravenes *Traynor's* instruction to give effect to narrow, comprehensive statutes like the Medicaid Act and *Alexander v. Choate*, 469 U.S. 287, 303, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), which rejected the "notion that the benefit provided through state Medicaid programs" consists of amorphous objectives.[48]

Because *Olmstead* does not transform the state of Washington's exercise of congressionally-conferred discretion into a discriminatory act, Townsend's proposed modification fails as a matter of law.

## IV

Townsend ultimately argues that a judgment directing Washington to accommodate him by providing community care to medically needy disabled individuals is reasonable. The claim of reasonableness is based on Townsend's assertion that community care costs less than institutionalized treatment; that community care will meet the goals of Washington's Medicaid program; and that he and like minded recipients will receive great personal benefit from such a program.

The text and structure of the Medicaid Act nevertheless make these policy considerations secondary. Congress has decided to encourage the provision of community care without regard to whether a state provides nursing home care, rather than requiring universal delivery of community care to the disabled. I would affirm the district court because Townsend's proposal to the contrary is not "reasonable" as a matter of law.

44. It should be noted that *Olmstead* involved a situation where the state already had a community care program for which the plaintiffs were qualified. *See* 527 U.S. at 593, 601, 119 S.Ct. 2176. In *Olmstead* the state was simply not moving the plaintiffs into the program. 527 U.S. at 601, 119 S.Ct. 2176 (recognizing that Georgia had over 1400 unused waiver slots by 1996). This is a far cry from the situation here.

45. *See* 42 U.S.C. §§ 1396d(f), 1396n(c)(1); 42 C.F.R. § 440.180.

46. *See* 42 U.S.C. §§ 1396d(f), 1396n(c).

47. In contrast to the court's opinion, I see no reason to fault states like Washington for adopting the very definitions found in the Medicaid Act. *See Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671 (1980) (states must comply with the Medicaid Act's requirements if they elect to participate in the program).

48. *Alexander* explicitly recognizes that "the benefit provided remains the *individual services* offered." 469 U.S. at 303, 105 S.Ct. 712 (emphasis added).

Townsend's desire to utilize home and community-based services to remain in the community is both understandable and reasonable. Despite this, federal law does not require the state of Washington to fulfill Townsend's desire.