**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE ARC OF WASHINGTON STATE INC.,
a Washington Corporation on behalf
of its members; GUADALUPE E. CANO,
by and through her guardian Delia
C. Cano; OLIVIA MURGUIA, by and
through her guardian Teri L. Hewett;
LORIANNE V. LUDWIGSON, by and
through her guardians Donald and
Sheryl Ludwigson,
                    *Plaintiffs-Appellants,*

                    v.                          No. 03-35605

DENNIS BRADDOCK, in his official                  D.C. No.
capacity as the Secretary of the             CV-99-05577-FDB
Washington Department of Social
and Health Services;* DEPARTMENT                  OPINION
OF SOCIAL & HEALTH SERVICES
STATE OF WASHINGTON; FINANCIAL
MANAGEMENT OFFICE OF THE STATE OF
WASHINGTON; MARTY BROWN, in his
official capacity as Director of the
Washington Office of Financial
Management; TIMOTHY R. BROWN, in
his official capacity as the Director
of the Washington State Division of
Developmental Disabilities;

---

*Dennis Braddock is substituted for his predecessor, Lyle Quasim, as Secretary of the Washington Department of Social and Health Services. Fed. R. App. P. 43(c)(2).

DEVELOPMENTAL DISABILITIES
DIVISION; CHRISTINE GREGOIRE,** in
her capacity as Governor of the
State of Washington,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Washington
Franklin D. Burgess, District Judge, Presiding

Argued October 4, 2004 and
Submitted March 29, 2005—Seattle, Washington

Filed March 29, 2005

Before: Alex Kozinski, Ferdinand F. Fernandez, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Fernandez

---

**Christine Gregoire is substituted for her predecessor, Gary Locke, as Governor of the State of Washington. Fed. R. App. P. 43(c)(2).

**COUNSEL**

Larry A. Jones, Law Offices of Larry A. Jones, Seattle, Washington; Susan Delanty Jones, Preston Gates & Ellis LLP, Seattle, Washington, for the plaintiffs-appellants.

William M. Van Hook and Edward J. Dee, Assistant Attorneys General, Office of the Attorney General, Olympia, Washington, for the defendants-appellees.

**OPINION**

FERNANDEZ, Circuit Judge:

The Arc of Washington State, Inc., and three developmentally disabled individuals (collectively Arc) appeal the grant of partial summary judgment against them, decertification of a class, and dismissal of their action against the Washington State Department of Social and Health Services, and others, (collectively DSHS). Arc claims that the district court committed numerous errors, including a ruling against Arc on the claim that Title II of the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327 (more particularly, 42 U.S.C. § 12132) is violated by a restriction on the number of people who can participate in the special Medicaid waiver program that provides for alternatives other than institutionalization for developmentally disabled people. 42 U.S.C. § 1396n(c). We affirm on the ADA issue.[1]

---

[1]We dispose of the other claims in an unpublished memorandum disposition and, based on that, remand for further proceedings.

## BACKGROUND

Medicaid is a program under which the federal government provides financial assistance to participating states to help them furnish care to low-income persons. If a state chooses to participate, which all 50 have, it must comply with the federal requirements and regulations, and it must also submit a plan for approval by the federal regulators. *See Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1093 (9th Cir. 1999).

DSHS devised a plan for providing services to qualified developmentally disabled individuals and divided it into two components. First, it funded Intermediate Care Facilities for the Mentally Retarded (ICF/MR), which are generally large public institutions that are made available to any person who meets the eligibility requirements for admission. *See* 42 U.S.C. § 1396d(a)(15), (d). In addition, the plan used some ICF/MR funds to support smaller, privately operated residences that serve between six and forty individuals each. Second, in an effort to gain more flexibility in developing its programs and to offer alternatives other than institutionalization, DSHS sought and received a waiver of certain ICF/MR rules. 42 U.S.C. § 1396n(c)(1); 42 C.F.R. § 441.300. That waiver program was known as the Home and Community-Based Services waiver (HCBS), or the Community Alternatives Program (CAP).[2] HCBS provided a variety of noninstitutional care options for qualified persons who desire to live at home or independently.

Central to the question presented to us is the HCBS limitation of its special services to a particular number of individuals — 9,977 when this action was filed. Such a limitation is expressly contemplated by the Medicaid waiver provisions. *See* 42 U.S.C. § 1396n(c)(9), (10); 42 C.F.R. § 441.303(f)(6).

---

[2]For the sake of clarity, the program will be referred to hereafter as HCBS.

Yet Arc asserts that it violates the ADA. The district court disagreed; hence, this appeal.

## DISCUSSION

What the issue in this case amounts to is a claim that the Medicaid provisions and the ADA clash. Thus, we are presented with a question of statutory interpretation, which we review de novo. *See Friend v. Reno*, 172 F.3d 638, 641 (9th Cir. 1999).

[1] We start with the statutory provisions themselves. As we have noted, the Medicaid statute and regulations do provide for waivers that will permit the provision of services at home. However, Congress saw that as a limited kind of program and, therefore, included the following provisions in 42 U.S.C. § 1396n(c), the waiver portion of the statute:

> (9) In the case of any waiver under this subsection which contains a limit on the number of individuals who shall receive home or community-based services, the State may substitute additional individuals to receive such services to replace any individuals who die or become ineligible for services under the State plan.

> (10) The Secretary shall not limit to fewer than 200 the number of individuals in the State who may receive home and community-based services under a waiver under this subsection.

The regulations follow up on that and go on to require that the limitations must be adhered to. In fact:

> The State must indicate the number of unduplicated beneficiaries to which it intends to provide waiver services in each year of its program. This number will constitute a limit on the size of the

waiver program unless the State requests and the Secretary approves a greater number of waiver participants in a waiver amendment.

42 C.F.R. § 441.303(f)(6). Washington obtained that kind of waiver and has adhered to its limitations. There is no indication that Washington is not making full use of the available slots; rather, Arc complains that once the program is full, people must await openings before they can be added to the program.

[2] On the other hand, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12,132. And the regulations, which flesh out that provision, indicate that: "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). Because of that, says Arc, states cannot maintain the cap and must, actually, make the HCBS program available to every developmentally disabled person who could qualify for an ICF/MR setting, but who wishes to be in a HCBS setting instead. We do not agree.

Of course, the policy behind the ADA is a powerful one, and speaks to individuals' yearning to be as free as possible from institutionalization, with its concomitant segregation and restrictions. *See, e.g.*, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 599-601, 119 S. Ct. 2176, 2186-87, 144 L. Ed. 2d 540 (1999). But, the policy behind the Medicaid provision is one of experimentation, and the ADA requirements are not boundless. *Id.* at 603, 119 S. Ct. at 2188 (plurality). Indeed, if they were so, they might break Medicaid's back. *See Bryson v. Shumway*, 308 F.3d 79, 87 (1st Cir. 2002).

[3] Thus, to the extent that the statutes point in opposite directions, one of them must prevail. In this case, the Medic-

aid statute should receive the laurel wreath because, "[w]here there is no *clear* intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S. Ct. 2494, 2499, 96 L. Ed. 2d 385 (1987) (citation and internal quotation marks omitted); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85, 112 S. Ct. 2031, 2037, 119 L. Ed. 2d 157 (1992). As we said in *S.V. v. Sherwood School District*, 254 F.3d 877, 881 (9th Cir. 2001), "[i]t is a well-established tenet of statutory construction that a specific statute controls over a general statute." If Arc were correct, the general ADA injunction against discrimination would repeal the specific Medicaid provisions for limited waiver programs. That cannot be. In so stating, we do not mean that the ADA has nothing whatsoever to say about a state's obligation to provide community-based services to the disabled. We have already held to the contrary. *See Townsend v. Quasim*, 328 F.3d 511, 520 (9th Cir. 2003). We merely state that the ADA does not overcome the specific cap provisions in the Medicaid statute.

**[4]** To put it somewhat less starkly, the ADA and the Medicaid statutes and regulations can be harmonized so that each is effective in its own way. *See FCC v. NextWave Pers. Communications Inc.*, 537 U.S. 293, 304, 123 S. Ct. 832, 840, 154 L. Ed. 2d 863 (2003). Thus, congressional intent, as far as it can be discerned, can be given the "fullest expression" possible. *Get Oil Out! Inc. v. Exxon Corp.*, 586 F.2d 726, 729 (9th Cir. 1978). Medicaid fund availability will itself encourage the use of HCBS services for the developmentally disabled, a prime goal of the ADA, but the ADA will not fundamentally upset the Medicaid program. Similarly, the states will be left with reasonable leeway in their provision of services. *See Olmstead*, 527 U.S. at 603-04, 119 S. Ct. at 2188 (plurality).

## CONCLUSION

**[5]** We hold that notwithstanding the accommodation provisions of the ADA, states are permitted to use the cap pro-

vided in the Medicaid law when they utilize the Medicaid waiver program for HCBS.

AFFIRMED on the issue discussed in this opinion.[3] The parties shall bear their own costs on appeal.

---

[3]We note that we reverse and remand on certain issues in this case, which are considered in a memorandum disposition filed on this date.