NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 1, 2009[*]
Decided May 11, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| No. 08-3341 | Appeal from the United States District Court for the Western District of Wisconsin. |
| CHAD D. BOUMAN , | |
| *Plaintiff-Appellant*, | |
| | No. 07-cv-367-bbc |
| *v.* | |
| | Barbara B. Crabb, |
| STEVE ROBINSON, et al., | *Chief Judge*. |
| *Defendants-Appellees*. | |

**O R D E R**

Chad Bouman, an inmate at the Federal Correctional Institution in Oxford, Wisconsin, filed a complaint under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), claiming that prison officials twice violated his First

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

Amendment rights. First, Warden Ricardo Martinez placed Bouman in segregation after the warden heard about a speech that Bouman gave in which he labeled various prison staff as Free Masons. The second time occurred when prison officials, who Bouman claims were still resentful of the speech, searched his cell and punished him excessively for possessing contraband. We conclude that summary judgment was proper on both claims because he failed to exhaust his administrative remedies on the segregation claim and he presented no evidence of retaliation on the contraband claim.

We begin with two procedural matters. First, after filing his original complaint, Bouman moved to file a "supplemental complaint" with additional allegations, but the court denied the motion, explaining that if Bouman wished to file an amended complaint, he should highlight the new allegations. Bouman submitted an amended complaint, but he failed to highlight his new allegations. The court denied the motion without prejudice and informed Bouman that it would accept an amended complaint with the highlighted additions, but Bouman never submitted one. Second, during discovery, Bouman moved to compel the defendants to produce a copy of all sanctions that the prison imposed between 2004 and 2007 on all inmates who received an incident report for possessing contraband. About ten days later the defendants answered, arguing that Bouman's motion was moot because they had provided Bouman a week earlier with all of the documents he had requested. Bouman did not dispute the defendants' explanation, and a magistrate judge denied as moot Bouman's motion to compel.

The record contains the following evidence, which we construe in Bouman's favor. In April 2006, a correctional officer confiscated a speech that Bouman wrote about Free Masonry. He delivered a similar version of the speech to a prison class. The speech, a lengthy exposition about Free Masons and their plans to transform governments and religions, briefly alleges that some people, including certain prison officials, belonged to the group. Bouman later approached the "[w]arden and his associates" about retrieving the written copy, but upon learning of its contents, Warden Martinez placed Bouman in segregation for "insolence."

Four months later, Correctional Officer Michael Jacobs told Bouman that an "unknown staff member" had ordered him to search Bouman's cell. Upon discovering food in the cell, which is not permitted, Jacobs then cited Bouman for possessing contraband. Acting on the citation, the prison disciplinary committee suspended Bouman's prison employment for 720 days, a punishment that Bouman believes far exceeded the norm for similar violations. Bouman submitted an affidavit from David Dahler, another inmate, who asserted that since Dahler's incarceration in 1989, he had received incident reports for possessing contraband but had never lost more than 30 days' commissary or telephone

privileges and that he had never heard of anyone losing institutional jobs for more than 30 days for possessing contraband. But a disciplinary report, the authenticity of which is not disputed, from Bouman's cellmate showed that the cellmate had received the same punishment as Bouman for possessing contraband.

The defendants moved for summary judgment, arguing that Bouman had failed to exhaust his administrative remedies. The prison's record keeper asserted that Bouman had filed five administrative complaints, including one challenging his suspended-employment punishment for possessing the food, but none of them mentioned segregation or the Free Masons speech. Bouman's appeal of the denial of his suspended-employment grievance also did not mention the segregation order. The appeal asserted only that he had been "singled out" and mistreated because he is Jewish and had criticized the government. The prison appeal board concluded that the disciplinary committee's decision "met the standards of fairness [and] impartiality." Bouman argued that he had exhausted. Although he admitted that he failed to grieve the segregation punishment, he sought to excuse that failure because he was afraid of "being further detained." He also asserted that his later grievance of the punishment for possessing contraband covered his claim about the segregation because it referred to retaliation.

The district court ruled that the defendants had not proved that Bouman failed to exhaust his administrative remedies. It relied on Bouman's appeal of the grievance regarding the suspended employment, where he said that he had been "singled out" because of his beliefs. It also cited the prison appeal board's handling of the suspended-employment grievance as a "waiver" of the exhaustion defense because the board remarked that the disciplinary committee's decision met standards of fairness and impartiality. Finally, the court reasoned that the defendants never attested that Bouman had failed to file any grievances about retaliation. The court also rejected an alternative defense that Bouman's speech did not address a matter of public concern. Nevertheless the court concluded that Bouman had not produced evidence sufficient to show that the speech motivated the defendants' decision to punish him with segregation and suspended employment.

On appeal Bouman briefly argues that the district court erred by failing to give him enough time to submit an amended complaint. We review for abuse of discretion the district court's decision to deny a motion to amend a complaint. *See Dewitt v. Proctor Hosp.*, 517 F.3d 944, 949 (7th Cir. 2008). The district court did not reject Bouman's amended complaint as untimely; rather, the court rejected it *without prejudice* because Bouman failed to follow a specific, reasonable instruction to highlight new allegations. It then invited Bouman to submit a properly formatted amended complaint. The court was within its

discretion to conserve its resources by giving Bouman the chance to submit a properly highlighted amendment. Bouman simply failed to take advantage of that opportunity.

Bouman also argues that the district court should have granted his motion to compel discovery of the prison's records regarding punishment for contraband violations. He insists that these documents would have provided the evidence he needed to show that his punishment for possessing contraband was unduly severe and thus retaliation for his speech. We review a district court's denial of a discovery request for abuse of discretion. *Walker v. Sheahan*, 526 F.3d 973, 977-78 (7th Cir. 2008); *Reynolds v. Jamison*, 488 F.3d 756, 761 (7th Cir. 2007). The magistrate judge did not abuse its discretion in denying Bouman's motion to compel because Bouman did not refute during discovery the defendants' assertion that they sent him the requested documents.

Bouman next asserts that the district court erred in granting summary judgment on his claim that the defendants retaliated against him by placing him in segregation. He argues that the court ignored his affidavit that Bouman heard Warden Martinez order him into segregation for "insolence" shortly after the Warden heard about the speech. The government responds, as it argued to the district court, that we should decline to reach the merits of this claim because Bouman failed to exhaust his administrative remedies.

We agree with the government. *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535-36 (7th Cir. 1999) (failure to exhaust remedies precludes decision of the merits). Bouman cannot raise a *Bivens* claim in federal court if the defendants show that he did not use the prison's administrative procedures to alert the prison to the nature of the wrong for which he sought redress. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). Bouman admitted to the district court that he did not file a grievance challenging Warden Martinez's segregation order. Rather, he sought to excuse his failure to grieve his placement in segregation by arguing that he feared "being further detained" if he did. But he produced no evidence to support the reasonableness of his fear; to the contrary, the fact that he soon filed a grievance about the contraband violation refutes his fear. *See Dale*, 376 F.3d at 655-56 (a prisoner's "bald assertions" are not sufficient to support allegations that prison officials interfered with his grievance filing). Bouman also argued that his later grievances about his suspended-employment punishment for possessing contraband should be deemed to cover the segregation order as well. But none of Bouman's filings addressing the suspended-employment claim even mention that he had been placed in disciplinary segregation several months earlier, let alone that Warden Martinez had ordered him placed there in retaliation for his speech about the Free Masons.

We are also not persuaded by the district court's reasons for treating the later grievances about the suspended-employment punishment as covering the earlier

segregation order.  True, the later grievance did claim that the prison retaliated against Bouman for his views by suspending his employment.  But nothing in those grievance papers reasonably alerts the prison that Bouman was seeking redress for his placement in segregation four months earlier.  Indeed, Bouman never mentions the segregation order in his grievance.  So he did not exhaust.  *See Dale*, 376 F.3d at 655.

That brings us to Bouman's claim that prison staff retaliated against him for his speech when they suspended his job for 720 days after citing him for possessing contraband.  Reviewing de novo the district court's grant of summary judgment, *see Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008), we examine whether Bouman produced sufficient evidence that the Free Masons speech motivated the suspension of job privileges, *see Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *Salas v. Wisc. Dep't of Corr.*, 493 F.3d 913, 925 (7th Cir 2007).  He has not.  Officer Jacobs's statement that a "higher up" ordered the cell search does not reflect *why* the search was ordered, so that statement is unhelpful to prove retaliation.  Furthermore, the timing of the search—four months after the speech—does not itself create a triable issue.  *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008); *Adusimilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998).  And inmate Dahler's assertion that he received more lenient punishment than Bouman for contraband violations is unconvincing because Bouman produced no evidence that he and Dahler are similarly situated.  *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-06 (7th Cir. 2007) (for purposes of a retaliation claim under 42 U.S.C. § 1981, employees are "similarly situated" if there are "enough common features between the individuals to allow a meaningful comparison").  Finally, Dahler's and Bouman's belief that no one has been punished as severely as Bouman for a contraband violation is useless because neither has personal knowledge about the punishments that every other prisoner has received, including Bouman's cell mate who, according to the cell mate's incident report, received the same punishment for the same violation.  *See* FED. R. CIV. P. 56(e); *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

We thus AFFIRM the district court's grant of summary judgment.