**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| VIDEO GAMING TECHNOLOGIES, INC., a Tennessee corporation; JOAN SEBASTIANI, an individual,<br><br>  Plaintiff,<br><br> and<br><br>UNITED CEREBRAL PALSY OF GREATER SACRAMENTO, a California non-profit corporation; WIND YOUTH SERVICES, a California non-profit corporation; ROBERT FOSS, an individual,<br><br>  Plaintiffs - Appellees,<br><br> v.<br><br>BUREAU OF GAMBLING CONTROL, a law enforcement division of the California Department of Justice; MATHEW J. CAMPOY, in his official capacity as the Acting Chief of the Bureau of Gambling Control,<br><br>  Defendants - Appellants, | No. 09-16092<br><br>D.C. No. 2:08-cv-01241-JAM-EFB<br><br>MEMORANDUM [*] |

---

  [*]  This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

v.

HAGGIN GRANT POST NO. 521, THE AMERICAN LEGION, DEPARTMENT OF CALIFORNIA; CASA ROBLE HIGH SCHOOL RAMSMEN, INC.; MARY BROWN, an individual; EL CAMINO ATHLETIC BOOSTER CLUB, a California non-profit corporation; CAPITAL BINGO, INC.,

        Plaintiff-intervenors - Appellees.

VIDEO GAMING TECHNOLOGIES, INC., a Tennessee corporation,

        Plaintiff,

JOAN SEBASTIANI, an individual,

        Plaintiff,

 and

UNITED CEREBRAL PALSY OF GREATER SACRAMENTO, a California non-profit corporation; WIND YOUTH SERVICES, a California non-profit corporation; ROBERT FOSS, an individual,

        Plaintiffs - Appellees,

  v.

BUREAU OF GAMBLING CONTROL, a

No. 09-16165

D.C. No. 2:08-cv-01241-JAM-EFB

law enforcement division of the California Department of Justice; MATHEW J. CAMPOY, in his official capacity as the Acting Chief of the Bureau of Gambling Control,

Defendants,

 and

JOHN MCGINNESS, in his official capacity as Sacramento County Sheriff,

Defendant - Appellant,

 v.

HAGGIN GRANT POST NO. 521, THE AMERICAN LEGION, DEPARTMENT OF CALIFORNIA; CASA ROBLE HIGH SCHOOL RAMSMEN, INC.; CAPITAL BINGO, INC.; MARY BROWN, an individual; EL CAMINO ATHLETIC BOOSTER CLUB, a California non-profit corporation,

Plaintiff-intervenors - Appellees.

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted October 8, 2009
San Francisco, California

Before: WALLACE, THOMAS and BYBEE, Circuit Judges.

The California Bureau of Gambling Control and the Sacramento County Sheriff bring this appeal from the entry of a preliminary injunction. The appellees – individuals with disabilities, not-for-profit organizations that raise funds by offering bingo, and a manufacturer of certain electronic bingo games – allege that a recently-enacted California law expressly banning certain electronic bingo machines, 2008 Senate Bill 1369, amending Cal. Pen. Code § 326.5 *et seq.*,[1] runs afoul of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-34. The district court granted a preliminary injunction prohibiting California state and local law enforcement, including appellants the California Bureau of Gambling Control and the Sacramento County Sheriff, "from taking any enforcement action against and/or interfering with the play of charitable bingo on electronic machines in any way." We hold that the district court abused its discretion in granting the injunction and therefore reverse.[2]

I

---

[1] Senate Bill 1369 amended the California Penal Code in two ways: (1) it specifically outlawed most electronic bingo machines, Cal. Pen. Code § 326.5(o), and (2) it specifically allowed certain electronic accommodations for the play of live call bingo, *id.* § 326.5(p) *et seq.*

[2] As the parties are familiar with the facts and proceedings, we will not repeat them here except as necessary to explain our reasoning.

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). In each case in which a party seeks a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 376 (internal quotation marks and citation omitted). "A preliminary injunction is an extraordinary remedy never awarded as of right," *id.* at 376, and where the party seeking a preliminary injunction fails to satisfy any one of the *Winter* factors, the preliminary injunction must be denied. *Id.* at 375-76.

II

Here, plaintiffs failed to show that they were likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tipped in their favor, and that an injunction was in the public interest.[3] The district court therefore abused its discretion in granting plaintiffs' motion for a preliminary injunction.

---

[3] Because we hold that plaintiffs failed to satisfy the irreparable harm, balance of equities, and public interest prongs of the *Winter* test, we do not address plaintiffs' likelihood of success on the merits of their claims. *See Winter*, 129 S. Ct. at 381.

A

We have held "that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). Whatever qualms the district court may have had about the swiftness of its enactment, Senate Bill 1369 was passed by the California Legislature and signed into law by the state's governor. It is therefore "an enactment of . . . [California's] representatives," the injunction of which irreparably harms appellants under this court's precedent.

As to the harm the plaintiffs must show, the Supreme Court has emphasized that "recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983). Here, neither the charitable organization plaintiffs nor the disabled plaintiffs demonstrated that they would suffer any "great and immediate" irreparable injury in the absence of a preliminary injunction.

The charitable organization plaintiffs assert that not having electronic bingo machines will significantly hinder their fundraising ability, but monetary injuries to these plaintiffs are not irreparable. It is true that this circuit has held that, in some

-6-

circumstances, monetary injuries may be irreparable if Eleventh Amendment sovereign immunity will bar a party from ever recovering those damages in federal court, *California Pharmacists Ass'n v. Maxwell-Jolly,* 563 F.3d 847, 851-52 (9th Cir. 2009), but we need not delve into that issue here. Senate Bill 1369 created a Charity Bingo Mitigation Fund, from which funds are made available to charitable organizations for the very purpose of mitigating the financial impact of the law. Cal. Pen. Code § 326.4 *et seq.* We conclude that the charitable association plaintiffs have not shown that they face "great and immediate" irreparable harm.

By contrast, the disabled plaintiffs maintain that, in the absence of a preliminary injunction, they (like everyone else in California) will be prevented from playing electronic bingo. That may be true, but they (like everyone else in California) will still be able to play live call bingo, and they will be able to use the electronic and non-electronic aids expressly available under state and local law. The temporary inability of the disabled plaintiffs to play a game illegal to all other individuals in California cannot be deemed a "great and immediate" harm. Moreover, plaintiffs have not explained why such harm could not meaningfully be remedied in a subsequent claim for damages.

B

A party seeking injunctive relief "must establish . . . that the balance of equities tips in his favor." *Winter*, 129 F.3d at 374. In assessing whether a party has met this burden, the district court has a "duty . . . to balance the interests of all parties and weigh the damage to each." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

Here, the balance of equities does not favor injunctive relief. The State of California and Sacramento County have strong interests in regulating gambling and in enforcing their criminal laws, and the damage to these interests from the preliminary injunction is quite serious. By contrast, the disabled plaintiffs seek to gamble using electronic machines that are unavailable under state law to everyone else in California, and the charitable organization plaintiffs seek to raise money through the use of these illegal machines. Had the district court correctly "balance[d] the interests of all parties and weigh[ed] the damage to each," *id.*, it could not have held that the balance of equities favored granting the injunction.

C

Finally, the district court also abused its discretion in holding that a preliminary injunction was in the public interest. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129

-8-

S. Ct. at 376-77 (quotation marks and citation omitted). But in this case, as in *Winter* itself, "[t]he district court did not give serious consideration to the public interest factor." *Id.* at 378 (quotation marks and citation omitted; alteration in original).

Here, the preliminary injunction conflicted with the public interest in two ways: first, by frustrating the public's interest in strictly regulating gambling, including charitable bingo, and second, by frustrating the public's interest in the enforcement of state and local criminal laws. The State of California has strictly regulated gambling in general, and bingo in particular, for decades, not only by statute but by its Constitution. *See* CAL. CONST. art. IV, § 19(c). In the past year, California's legislature and its governor – the public's elected representatives – approved a law both proscribing the precise electronic bingo machines at issue in this case and providing for accommodations for disabled persons wishing to play live call bingo. The people of California have thus repeatedly expressed, and recently reaffirmed, their interest in strictly regulating gambling in their state, including charitable bingo. As for the public's interest in the enforcement of state and local criminal laws, no further explication is necessary.

III

In sum, the district court abused its discretion in granting the preliminary injunction, as plaintiffs failed to satisfy the irreparable harm, balance of equities, and public interest prongs of the *Winter* test. The judgment is reversed and the case remanded to the district court.

The panel will retain jurisdiction in this case.

**REVERSED.**

*United Cerebral Palsy v. Bureau of Gambling*, Nos. 09-16092 and 09-16165

BYBEE, Circuit Judge, concurring:

I fully agree with the majority that the district court abused its discretion in granting the preliminary injunction. However, I write separately to emphasize that, although the majority declined to reach the issue, in my view the plaintiffs plainly have not demonstrated any likelihood of success on the merits of their claims under Title II of the Americans with Disabilities Act (ADA). Electronic slot machines are not a reasonable accommodation for disabled persons who wish to play live call bingo, and the ADA does not require California to permit such slot machines just because they have been titled "electronic bingo."

Title II of the ADA, 42 U.S.C. §§ 12131-34, requires that where the government provides a service to non-disabled persons, reasonable accommodations must be available for disabled persons to use *the service offered to non-disabled persons*. Here, plaintiffs' Title II claims are infirm for two reasons: (1) reasonable accommodations exist that allow disabled persons to play live call bingo, the only bingo "service" that may lawfully be offered to non-disabled persons in California; and (2) the electronic gaming machines at issue in this case do not offer live call bingo, but rather a completely different casino-style game virtually indistinguishable from a run-of-the-mill slot machine, and thus do

not qualify as an accommodation to any service offered to non-disabled persons by the State of California.

Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (describing the elements of a Title II claim). Where a disabled plaintiff demonstrates that she is denied meaningful access to a service provided by a public entity by virtue of her disability, Title II requires only "reasonable modifications that would not fundamentally alter the nature of the service provided." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (internal quotation marks omitted); *see also* 28 C.F.R. § 35.130(b)(7). In the instant case, it is clear that plaintiffs cannot prevail on their Title II claims.

As an initial matter, Title II applies only where a disabled individual is "excluded from participation in or denied the benefits of [a] public entity's services, programs, or activities, or [i]s otherwise discriminated against by [a] public entity." *McGary*, 386 F.3d at 1265. Since charitable bingo is provided in California only by *private* entities, any denial of meaningful access to traditional live call bingo attributable to bingo parlors is not cognizable under Title II. The

only possible Title II claim plaintiffs can make out must be premised on *legal impediments* imposed by California on plaintiffs' play of live call bingo. To put it another way, if state and local law *allows* reasonable modifications that assist plaintiffs in the play of live call bingo, plaintiffs have no claim under Title II.

Here, the Bureau and the Sheriff proffered credible, admissible evidence showing that reasonable accommodations to assist disabled individuals in the play of live call bingo were available under state and local law at the time of the hearing on the preliminary injunction.[1] For example, one declarant attested that there were "numerous electronic bingo monitoring devices available that assist disabled bingo patrons in the play of traditional live call bingo" by "notif[ying] the individuals of the existence of a winning bingo card and assist[ing] in daubing, but not tak[ing] the place of participation in the live-call bingo game." Another described "[e]lectronic bingo monitors . . . [that] allow patrons participating in a *live bingo game* to keep track of the calls for a larger number of bingo cards than they

---

[1] Shortly after the injunction was granted, California promulgated regulations specifically addressing the availability of accommodations for the disabled in live call bingo. *See* Cal. Admin. Code tit. 4, § 12482 *et seq.* These new regulations should put the matter beyond any doubt. Indeed, after the enactment of S.B. 1369 and the promulgation of these regulations, even VGT – an original plaintiff in this action and the manufacturer of most of the electronic bingo games subject to the preliminary injunction – concedes that plaintiffs' Title II claims have no legal merit.

otherwise might" and that "enable . . . persons with disabilities that prevent them from immediately daubing their bingo cards in response to live calls, to keep up with the game and accurately daub their winning combinations on their bingo cards as they occur."

Critically, at the time of the district court's order, California law explicitly permitted "[p]layers who are physically present at a bingo game [to] use hand-held, portable card-minding devices, as described in this subdivision, to assist in monitoring the numbers or symbols announced by a live caller as those numbers or symbols are called in a live game." Cal. Pen. Code § 326.5(p)(1). Non-electronic accommodations – for example, Braille cards – would also have been permissible under California law. *See* Cal. Pen. Code § 326(o). By contrast, plaintiffs offered no evidence that electronic aids such as card-minding devices could not effectively assist disabled persons in the play of live call bingo, and the evidence plaintiffs *did* offer indicated that legally-permissible aids such as card-minders could have accommodated the precise difficulties plaintiffs faced in the play of live call bingo.

The district court also abused its discretion with respect to another prerequisite of a Title II claim under the ADA. Even if California had failed to provide for *any* accommodations so that disabled plaintiffs were denied "meaningful access" to live call bingo, Title II would require only "reasonable

-4-

modifications that would not fundamentally alter the nature of the service provided." *Lane*, 541 U.S. at 532 (internal quotation marks omitted). Yet the casino-style electronic gaming machines at issue in this case fundamentally alter the nature of live call bingo – the only type of bingo legally available to any individual in California, and thus the only government "service" possibly implicated in this case – and are therefore simply not reasonable accommodations within the meaning of the ADA.

The electronic devices at issue in this litigation are, by any measure, slot machines. They bear no resemblance to true electronic aids such as card minding devices that actually assist disabled persons in the play of live call bingo. The VGT bingo machines pictured in the record feature buttons for "BET" and "BET MAX" as well as three spinning reels adorned with colorful 7s, SPINs, BARs, and cherries, all alongside a "payout schedule" explaining how many credits are awarded when various icons on the spinning reels align. As with a slot machine, a player on one of the electronic bingo machines deposits a sum of money and is assigned a corresponding number of credits, with each credit having a monetary equivalent. The player chooses the size of his or her bet, and a game is completed within a matter of seconds. The game is utterly passive, as it does not require the player to do anything at all except bet. At the conclusion of each game, a graphic

interface of slot machine-style reels accompanied by audio informs the player whether he or she has won.  The player wins proportionately more money by achieving particular patterns, with some unusually rare patterns apparently paying out at rates hundreds of times the size of the player's bet.  In contrast to live call bingo, a player on one of VGT's machines can "sleep" a bingo pattern for several minutes without the threat of losing his or her winnings.

While appellees occasionally refer to the video bingo devices at issue here as "electronic bingo aids," this is not a case in which a disabled plaintiff seeks to use a device to assist him in joining an existing, legal game.  Rather, appellees demand that California permit a *different* game that operates independently of the live call games permitted by state law.  The distinction between electronic aid in the play of an existing game and a wholly distinct electronic game is a critical one under the ADA.  By way of analogy, while the ADA requires that a disabled golfer who qualifies for the PGA Tour be allowed the use of a cart, *see PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001), it cannot seriously be argued that the ADA requires the PGA to allow qualification for, and competition in, its events on electronic simulators or on arcade machines, regardless of the verisimilitude between Augusta National's actual fairways and their electronic analogues.

While I agree with the majority that the district court abused its discretion

with respect to the irreparable harm, balance of equities, and public interest prongs of the preliminary injunction test, I would also reverse the district court's judgment on the grounds that plaintiffs had demonstrated no likelihood of success on the merits of their ADA claims.