BYBEE, Circuit Judge, concurring:
I fully agree with the majority that the district court abused its discretion in granting the preliminary injunction. However, I write separately to emphasize that, although the majority declined to reach the issue, in my view the plaintiffs plainly have not demonstrated any likelihood of success on the merits of their claims under Title II of the Americans with Disabilities Act (ADA). Electronic slot machines are not a reasonable accommodation for disabled persons who wish to play live call bingo, and the ADA does not require California to permit such slot machines just because they have been titled “electronic bingo.”
Title II of the ADA, 42 U.S.C. §§ 12131-34, requires that where the government provides a service to non-disabled persons, reasonable accommodations must be available for disabled persons to use the service offered, to non-disabled persons. Here, plaintiffs’ Title II claims are infirm for two reasons: (1) reasonable accommodations exist that allow disabled persons to play live call bingo, the only bingo “service” that may lawfully be offered to non-disabled persons in California; and (2) the electronic gaming machines at issue in this case do not offer live call bingo, but rather a completely different casino-style game virtually indistinguishable from a run-of-the-mill slot machine, and thus do not qualify as an accommodation to any service offered to non-disabled persons by the State of California.
Under Title II, “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. § 12132; see also McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir.2004) (describing the elements of a Title II claim). Where a disabled plaintiff demonstrates that she is *95 denied meaningful access to a service provided by a public entity by virtue of her disability, Title II requires only “reasonable modifications that would not fundamentally alter the nature of the service provided.” Tennessee v. Lane, 541 U.S. 509, 532, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (internal quotation marks omitted); see also 28 C.F.R. § 35.130(b)(7). In the instant case, it is clear that plaintiffs cannot prevail on their Title II claims.
As an initial matter, Title II applies only where a disabled individual is “excluded from participation in or denied the benefits of [a] public entity’s services, programs, or activities, or [i]s otherwise discriminated against by [a] public entity.” McGary, 386 F.3d at 1265. Since charitable bingo is provided in California only by private entities, any denial of meaningful access to traditional live call bingo attributable to bingo parlors is not cognizable under Title II. The only possible Title II claim plaintiffs can make out must be premised on legal impediments imposed by California on plaintiffs’ play of live call bingo. To put it another way, if state and local law allows reasonable modifications that assist plaintiffs in the play of live call bingo, plaintiffs have no claim under Title II.
Here, the Bureau and the Sheriff proffered credible, admissible evidence showing that reasonable accommodations to assist disabled individuals in the play of live call bingo were available under state and local law at the time of the hearing on the preliminary injunction.[1] For example, one declarant attested that there were “numerous electronic bingo monitoring devices available that assist disabled bingo patrons in the play of traditional live call bingo” by “notifying] the individuals of the existence of a winning bingo card and assisting] in daubing, but not tak[ing] the place of participation in the live-call bingo game.” Another described “[electronic bingo monitors ... [that] allow patrons participating in a live bingo game to keep track of the calls for a larger number of bingo cards than they otherwise might” and that “enable ... persons with disabilities that prevent them from immediately daubing their bingo cards in response to live calls, to keep up with the game and accurately daub their winning combinations on their bingo cards as they occur.”
Critically, at the time of the district court’s order, California law explicitly permitted “[pjlayers who are physically present at a bingo game [to] use hand-held, portable card-minding devices, as described in this subdivision, to assist in monitoring the numbers or symbols announced by a live caller as those numbers or symbols are called in a live game.” Cal. Pen.Code § 326.5(p)(l). Non-electronie accommodations — for example, Braille cards — would also have been permissible under California law. See Cal. Pen.Code § 326(0). By contrast, plaintiffs offered no evidence that electronic aids such as card-minding devices could not effectively assist disabled persons in the play of live call bingo, and the evidence plaintiffs did offer indicated that legally-permissible aids such as card-minders could have accommodated the precise difficulties plaintiffs faced in the play of live call bingo. *96 The district court also abused its discretion with respect to another prerequisite of a Title II claim under the ADA. Even if California had failed to provide for any accommodations so that disabled plaintiffs were denied “meaningful access” to live call bingo, Title II would require only “reasonable modifications that would not fundamentally alter the nature of the service provided.” Lane, 541 U.S. at 532, 124 S.Ct. 1978 (internal quotation marks omitted). Yet the casino-style electronic gaming machines at issue in this case fundamentally alter the nature of live call bingo — the only type of bingo legally available to any individual in California, and thus the only government “service” possibly implicated in this case — and are therefore simply not reasonable accommodations within the meaning of the ADA.
The electronic devices at issue in this litigation are, by any measure, slot machines. They bear no resemblance to true electronic aids such as card minding devices that actually assist disabled persons in the play of live call bingo. The VGT bingo machines pictured in the record feature buttons for “BET” and “BET MAX” as well as three spinning reels adorned with colorful 7s, SPINs, BARS, and cherries, all alongside a “payout schedule” explaining how many credits are awarded when various icons on the spinning reels align. As with a slot machine, a player on one of the electronic bingo machines deposits a sum of money and is assigned a corresponding number of credits, with each credit having a monetary equivalent. The player chooses the size of his or her bet, and a game is completed within a matter of seconds. The game is utterly passive, as it does not require the player to do anything at all except bet. At the conclusion of each game, a graphic interface of slot machine-style reels accompanied by audio informs the player whether he or she has won. The player wins proportionately more money by achieving particular patterns, with some unusually rare patterns apparently paying out at rates hundreds of times the size of the player’s bet. In contrast to live call bingo, a player on one of VGT’s machines can “sleep” a bingo pattern for several minutes without the threat of losing his or her winnings.
While appellees occasionally refer to the video bingo devices at issue here as “electronic bingo aids,” this is not a case in which a disabled plaintiff seeks to use a device to assist him in joining an existing, legal game. Rather, appellees demand that California permit a different game that operates independently of the live call games permitted by state law. The distinction between electronic aid in the play of an existing game and a wholly distinct electronic game is a critical one under the ADA. By way of analogy, while the ADA requires that a disabled golfer who qualifies for the PGA Tour be allowed the use of a cart, see PGA Tour, Inc. v. Martin, 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001), it cannot seriously be argued that the ADA requires the PGA to allow qualification for, and competition in, its events on electronic simulators or on arcade machines, regardless of the verisimilitude between Augusta National’s actual fairways and their electronic analogues.
While I agree with the majority that the district court abused its discretion with respect to the irreparable harm, balance of equities, and public interest prongs of the preliminary injunction test, I would also reverse the district court’s judgment on the grounds that plaintiffs had demonstrated no likelihood of success on the merits of their ADA claims.

. Shortly after the injunction was granted, California promulgated regulations specifically addressing the availability of accommodations for the disabled in live call bingo. See Cal. Admin. Code tit. 4, § 12482 et seq. These new regulations should put the matter beyond any doubt. Indeed, after the enactment of S.B. 1369 and the promulgation of these regulations, even VGT — an. original plaintiff in this action and the manufacturer of most of the electronic bingo games subject to the preliminary injunction — concedes that plaintiffs' Title II claims have no legal merit.